Good morning, everybody. We're happy to be here, pleased to be sitting in Phoenix. Judge D'Alba and I would like to welcome Judge Chen, who is sitting by designation from the Northern District of California. Thank you for being here. We have one case being submitted today without argument, and that's Arnett v. O'Malley. That case is now submitted. And we'll hear three cases. We'll take them up in the order they appear on the calendar, starting with Orozco Guzman v. Garland. Each side will have 10 minutes. Mr. Wiesinger? Wiesinger. Wiesinger. When you're ready, you may begin. Thank you. Good morning, and may it please the Court, Ben Wiesinger on behalf of the Petitioner encourages the Court to adopt the formulation by the Second Circuit that I submitted in my 28-J letter a few days ago. And that formulation is that so long as the factual predicate of the applicant's claim is independent of the testimony found not credible, then it's not deadly to a claim of future persecution. And here the facts are essentially identical to the fact pattern in Paul. And the only facts that are actually necessary to go forward on a fear of future persecution are the fact that my client is female and that she is from Guatemala. Even if... But counsel, there's only one instance that she cited of violence, one instance of persecution that's particular to her personally, which is the incident in credibility, isn't it? But, Your Honor, the Petitioner expressly stated on the record, and it's been her position all along, that her basis for her asylum claim is a well-founded fear of future persecution. Even if the judge were to have found that one incident of violence to be credible, it does not under any case law that I know of support a finding of past persecution. That's why we've been going forward on a theory of future persecution since the trial. But the future persecution evidence is based solely, then, on her general testimony about what she's read and heard in the country reports. There's nothing specific to her. Correct. But the Board didn't even address that. And so I believe that this Court must remand the matter to the Board of Immigration Appeals to consider, in the first instance, the Respondent's arguments about her well-founded fear of future persecution, on the grounds that she is a female from Guatemala, and to review the judge's original findings that the, for example, the particular, sorry, the, now I'm getting tongue-tied, of course, whether she is part of a disfavored group. When you're part of a disfavored group, you don't have to specifically show that you have been persecuted, or that you will likely be persecuted, as long as the group itself is, the disfavored group is persecuted. And so the Court must remand the case back to the Board of Immigration Appeals for a decision on that issue in the first instance. Has there been a case when the persecuted group is defined so broadly as all women in a particular country, as opposed to some subsection of that, or some, you know, smaller, smaller subgroup? A matter of Mogherabi, Perdomo v. Holder, these cases stand for the proposition that in countries where violence against women is so widespread that there is no basis in case law to say that just because it's essentially half the country, that that doesn't mean that they're not a particular social group. And that's really, unfortunately, not for this Court to decide in the first place today, because the Board of Immigration Appeals did not even look at that part of my client's arguments. Well, if there are no further questions from the Court, I will resume. What about the Board did say that there wasn't a sufficient showing of likelihood to be tortured by or with the acquiescence of public officials? That was the cat point. That's another component. Right. But that was just in regards to the cat claim, Your Honor. It had nothing to do with my client's claims for asylum or withholding or removal. And that cat claim, yes, is squarely before the Court, and I would argue that the evidence, the country conditions evidence, does support a finding that being raped and murdered as a woman in Guatemala constitutes torture, and it's just a matter  of whether or not that's true. And the evidence is clear that the government of Guatemala, while they pass laws regarding violence against women in Guatemala, they don't have the resources directed to the local governments to actually protect women or investigate these crimes. So, counsel, is there any evidence in the record that shows that your client has a wife? And would your contention then be that any woman from Guatemala can come and seek asylum here? Yes. Absolutely. Just like any woman from, oh, for example, Somalia, where she's likely to be mutilated as a young woman. I would argue that every Somali woman would be eligible for asylum under our laws. Okay. Is there a case where an asylum claim has been granted when there's been no evidence of actual harm or violence against the petitioner? Well, I don't have a particular case in mind, Your Honor, but, for example, if you were a Jew fleeing Nazi Germany in the late 30s, you didn't have to show that you got harmed in order to be granted asylum on the basis of your race or religion. With that, again, I encourage the Court to adopt that Second Circuit formulation in Paul v. Gonzalez, and I will reserve the rest of my time. Thank you. Mr. Rabin? Rabin, Your Honor. Rabin, okay. May it please the Court, Arthur Rabin on behalf of the respondent to the Attorney General in this case. So the issue in this case is whether or not substantial evidence supports the agency's finding, and we submit that it does. And the reason that it does is because there's an adverse credibility finding that trumps pretty much everything that she said. And I know that we asked this question in our focus order, but I'm curious to know why we wouldn't send it back for the BIA to determine whether the remaining – so if we find that the first basis for the adverse credibility finding is unsupported, why wouldn't we send it back to determine whether or not the remaining adverse credibility finding is sufficient to cover the totality of the adverse credibility determination? Yes, Your Honor. So in response to the Court's order, I filed a 28-J letter about the Elam case. And in there, the Court said, well, under the totality of the circumstances, it doesn't matter if it's five different inconsistencies or just one. In the case that you cited, and the point that you're making is it's true that in the first instance, there can be a totality of the circumstances used to make an adverse credibility determination. But as we're reviewing it and we determine that one of those bases is not supported by the record, how can we know that the remaining basis is sufficient? I would love to argue those. So, first of all, as to the very first basis, which is her testimony that she was alone during the time that the single incident here was that she was robbed walking back from school, and she was robbed on the street by a man who just singled her out because she was alone. Well, that contradicts her written asylum declaration where she wrote that her brother was with her who rescued her, and her brother is the one that was assaulted by the man who had robbed her. And, in fact, the brother's declaration, so now we're talking about inconsistency between her testimony and her declaration, and now we just step back and we actually look at the brother's declaration. Well, not only does it not support what she said happened, but it contradicts what she said happened. He said that instead of March, the robbery incident happened in April. Instead of her being robbed, he was robbed. Instead of her being hurt, he was hurt. So it's not just one instance. And his testimony perhaps pertained to a home invasion robbery, not the same incident on the street. Wasn't it his absence of even mentioning the March incident the contradiction with her testimony? Well, that's when so this is not whether or not she was alone, not how many instances or how many incidents actually happened. That's a completely separate ground for the adverse credibility finding. We're just talking about whether or not she was alone. And her explanation for the discrepancy. I think Chen's question, though, goes to the second point with respect to the prevalence of violence. The BIA found it inconsistent that your client testified she experienced only one violent incident while her brother's affidavit discussed a robbery of her home. So they're talking about two different things. And, frankly, even if they were inconsistent, this doesn't bolster, I'm sorry, not your client, but the petitioner's claim for relief. So it's an inconsistency that isn't supported by the record because they're really talking about apples and oranges. But even if it were an inconsistency, it doesn't go to her claim. So how could that be a basis for an adverse credibility finding? Well, because the adverse credibility finding was not about how many incidents. That was a separate, separate ground for the adverse credibility. The very first thing that I thought we were talking about is whether or not she was alone. And the whole controversy was not between just her and her brother. It was between her testimony and her prior written asylum declaration. Her testimony, she was alone. She was specifically asked numerous times, were you alone? She said, yes. That's why I was singled out, because this is who they pick on, people who are alone. But then she wrote in her asylum declaration is that she wasn't alone. We're talking about just her own short. Okay. So now move on to the separate issue.  So the other ground is how many instances, and this is, I think, what the Court is referring to, how many instances of violence did she actually incur? So she testified one. Her brother says no. Our family is constantly being, and I want to make sure I quote this correctly, her brother said the family is constantly victim of violence as well as economic and physical crimes. Her mother said that she was, the petitioner was continually a victim of violence, of robberies at her house, not at a bus stop. Her neighbor wrote that petitioner's family was a victim of robbery. And then the municipal mayor wrote that it was the petitioner who was assaulted in her own house. So we're talking about not just whether or not the core fact, I mean, we're talking, the core facts of her entire claim is contained in that one robbery. And now her own evidence that she submitted, the written corroborative evidence that she had submitted, contradicts what she said, what she testified to. It contradicts it in the way that it was multiple acts, where it occurred. She said it was at a bus stop. They claimed that she was assaulted, or the mayor said she was assaulted in her home. The mom said it was assault, victim of robbery at her house. And then the brother says it was also multiple incidents of violence. Now we have the flip situation of the usual. Instead of exaggerating how many times she's been a victim of violence, if anything, she's understated that and not acknowledged all those, which actually hurt her claim of, in some ways, and some courts point out, that actually bolsters, one could argue that actually bolsters credibility because she's not out there exaggerating. She's understating it. Sure. So I'm not sure how that. Unless she just couldn't keep her story straight. So we have a petitioner who's testifying about what happened, a single incident of what happened to her, and she cannot keep her story straight. And we know that because the immigration judge had the same concern as you did, Judge Chen. He simply asked her and said, you know what, listen, you say it was a single incident, but now we have all this evidence for your brother saying it was multiple incidents, including multiple incidents of violence. And the robbery at the home, the judge asked her, he said, why didn't you mention being robbed? You know, and she, her explanation was, well, I was only talking about me. Well, again, is it the brother you're talking about or just me? I want you to consider this hypothetical now because this is really more of a procedural question than it is about the substance. If this court were to find that this incident that you're talking about or this basis for an adverse credibility determination is not supported by the record, we find that it either bolsters her credibility or that it doesn't go to her credibility, then my question is why wouldn't we send this back for a determination as to whether or not there would still be an adverse credibility determination overall now that one of the two bases is found to be erroneous? Okay. So two answers you're on. One is the court could send it back, but under a rung, the test is not whether or not you could send it back. It is whether the court finds compelling evidence in the record. Not on whether you think that you should send it back, but do you find compelling evidence in the record to send it back? And number two, under the relevant legal test, under the totality of the instances of contradictions that I've cited, including the one I didn't get to, which is her nonresponsiveness to the immigration judge when he asked her, why didn't you answer when so when your lawyer asked you how many instances of violence were there and she said only one, and your brother testified or stated that your home is constantly victims of violence, and she said, yes, I considered the invasion of our home instances of violence. She was completely unresponsive when the judge confronted her and asked her for an explanation, and he cited on the record her unresponsiveness. That is, she was nonplussed. She was completely flabbergasted and could not even explain why her brother says she was in multiple instances of violence. She said only one. So at this point, Your Honor, I would say in your answer, do you find that the evidence that you find in the record, and number two, under the law, under the totality of the circumstances and all other factors, according to the statute, 8 U.S.C. 1158 B, I want to say 3B, specifically it says the court has to look at totality of circumstances and all relevant factors, including inconsistencies, demeanor, nonresponsiveness, consistency with her statements, within her statements, with statements that are made by others, and we would submit on this record, even if the court found one of the discrepancies cited by an immigration judge may be not supported by the record, but does compel reversal of the rest. Under the totality of the circumstances test, under 8 U.S.C. 1158 B, are you saying it is for the court to apply the totality of the circumstances test in reviewing the administrative decision below, even if the administrative decision didn't get it right, got part of it right, got part of it wrong, the reviewing court looks at it under the totality of the circumstances test and then applies that, and normally that's for the court to do and not a candidate for remand? I mean, under the law, it's not clear, because usually it is for the credibility determinations made by the agency. The court defers to adverse credibility determinations and only reverses them if they're compelling enough. Alon said, well, no longer is a single instance of contradiction will be sufficient unless, under the totality of the circumstances, the court can sustain adverse credibility findings. So I would submit it is still up to the court to look at whether the board, under the totality of the circumstances, has sufficient ground to sustain the adverse credibility. But your compelling interest test is based on the general framework of reviewing the credibility of the ALJ's termination? Yes, sir. Thank you. Subject to the Court's questions, that completes my argument. I don't think so. Thank you very much. Thank you, Your Honor. Your Honor, I submit that even if the court were to find that the adverse credibility determination was supported by substantial evidence, we still need to remand this case, because that has no bearing on the case. Well, I understand your argument on this point, but I'd like you to address the discussion that we were just having with your friend on the other side. What is your view of whether or not this court can, under Kumar, I'm not sure if you're familiar with Kumar v. Garland, that's a case from our circuit in 2021, that basically, I think, articulates the standard that your colleague here talked about, which is whether we can, as a court, now consider the totality of circumstances to determine whether the one adverse credibility determination or the one basis for an adverse credibility determination is sufficient. What is your position on that? It's not sufficient. Under the totality of circumstances approach, as I understand it, the court or the, actually, it's the adjudicator, in the first instance, must look to the totality of the circumstances. And so if the court finds that the adjudicator, in this case the immigration judge or the board of immigration appeals, if the adjudicator did not use the totality of circumstances approach, then the court must remand. The court must find that the adverse credibility determination cannot be sustained. Now, the board used the magic language, totality of the circumstances, in its decision in this case, but did they actually look at the totality of the circumstances? One of the... And what's your best authority for your view that we would need to send it back for that determination in the first instance? That's Imam. That's the case that my colleague cited in his 28J letter. And I'm not going poor me, poor immigration litigator on you, Your Honors, but one of the common limitations that we have is that in cases like this, in asylum cases, we have to ask for letters from family members. Because if there are no letters from no family members, well, then that also undercuts an applicant's credibility. But then, you know, unlike civil litigation here, where, you know, litigators get to question witnesses during, you know, prior to whoever submitting a statement, we get what we get. And the letters from the family members in Guatemala suggest kind of generalized violence, generalized, you know, unsafe conditions and generalized poverty. And I would submit that that is not, that doesn't undermine my client's credibility because they're describing generalized country conditions. And those letters then are supported by the other evidence in the record, the country conditions evidence. So, if there are no further questions? No. Thank you very much, Counsel.
judges: DESAI, ALBA, Chen